IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ACERTA PHARMA B.V., ASTRAZENECA ）
UK LTD. and ASTRAZENECA ）
PHARMACEUTICALS LP, ）
                              ）
            Plaintiffs, ）
                              ）
        v. ）   C.A. No. 18-581 (RGA)
                              ）
PHARMACYCLICS LLC and ABBVIE INC. ）   **REDACTED –**
                              ）   **PUBLIC VERSION**
           Defendants. ）

**OPENING BRIEF IN SUPPORT OF JANSSEN BIOTECH, INC.'S**
<u>**CONSENTED TO MOTION TO INTERVENE**</u>

<div style="margin-left:40%;">

MORRIS, NICHOLS, ARSHT &TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan(#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

</div>

OF COUNSEL:

Irena Royzman, Ph.D.                          *Attorneys for Janssen Biotech, Inc.*
Lachlan S. Campbell-Verduyn, Ph.D.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY  10036
(212) 336-2000

Original Fling Date: November 21, 2018
Redacted Filing Date: November 27, 2018

**HIGHLY CONFIDENTIAL**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION ............................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ....................................2

SUMMARY OF THE ARGUMENT ...........................................................2

STATEMENT OF FACTS ...........................................................................3

    A.    The development and marketing of Imbruvica .......................................3

    B.    The actions between PCYC/AbbVie and Acerta/AstraZeneca ...............4

ARGUMENT ..................................................................................................5

I.    JANSSEN CAN INTERVENE AS A MATTER OF RIGHT ............................5

    A.    Janssen's motion to intervene is timely ................................................6

    B.    Janssen has a compelling interest in this action and its disposition .......8

    C.    Defendants may not adequately represent Janssen's interests ...............9

II.    PERMISSIVE INTERVENTION IS ALSO APPROPRIATE ..........................10

CONCLUSION ..............................................................................................12

HIGHLY CONFIDENTIAL

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Farm Bureau Fed'n v. United States EPA*,
    278 F.R.D. 98 (M.D. Pa. 2011)................................................................................9

*Bell Atl.-Delaware, Inc. v. Global NAPS S.*, Inc.,
    77 F. Supp. 2d 492 (D. Del. 1999)........................................................................10

*Brody v. Spang*,
    957 F.2d 1108 (3d Cir. 1992)..................................................................................8

*Endoheart AG v. Edwards Lifesciences Corp.*,
    2015 U.S. Dist. LEXIS 150711 (D. Del. Nov. 6, 2015),
    *report & recommendation adopted*, 2016 U.S. Dist. LEXIS 42946
    (D. Del. Mar. 31, 2016).........................................................................................6

*Ericsson, Inc. v. InterDigital Commc'ns Corp.*,
    418 F.3d 1217 (Fed. Cir. 2005)..............................................................................5

*HBB Ltd. P'ship v. Ford Motor Co.*,
    1992 U.S. Dist. LEXIS 17543 (N.D. Ill. Oct. 2, 1992).........................................11

*Honeywell Int'l, Inc. v. Audiovox Commc'ns Corp.*,
    2005 U.S. Dist. LEXIS 22933 (D. Del. May 18, 2015)......................................6, 8

*Intellectual Ventures I LLC v. AT&T Mobility LLC*,
    2014 U.S. Dist. LEXIS 125280 (D. Del. Sept 8, 2014)...............................6, 8, 12

*Kleisser v. U.S. Forest Serv.*,
    157 F.3d 966 (3d Cir. 1998)................................................................................6, 8

*Lemelson v. Larami Corp.*,
    1981 U.S. Dist. LEXIS 17331 (S.D.N.Y. March 19, 1981) ..................................11

*MiiCs & Partners America, Inc. v. Toshiba Corp.*,
    No. 14-804-RGA, D.I. 160 (D. Del. June 15, 2016)..................................... *passim*

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
    72 F.3d 361 (3d Cir. 1995)..................................................................................7, 8

*Nikon Corp. v. ASM Litho. B.V.*,
    222 F.R.D. 647 (N.D. Cal. 2004)..........................................................................11

*Select Retrieval LLC v. Amerimark Direct LLC*,
    No. 12-1440-RGA, D.I. 34 (D. Del. July 3, 2013) ....................................6, 7, 9, 12

**HIGHLY CONFIDENTIAL**

*Trbovich v. United Mine Workers,*
　404 U.S. 528 n.10 (1972) ........................................................................................... 9

*Trustees of the University of Penn. v. St. Jude Children's Research Hospital,*
　No. 13-1502-SD, D.I. 76 (E.D. Pa. March 13, 2014) ................................................. 9

*United States v. Alcan Aluminum, Inc.*
　25 F.3d 1174 (3d Cir. 1994) ...................................................................................... 7

*United States v. Territory of the V.I.,*
　748 F.3d 514 (3d Cir. 2014) ...................................................................................... 5

*Utah Ass'n of Ctys. v. Clinton,*
　255 F.3d 1246 (10th Cir. 2001) ................................................................................. 9

**Other Authorities**

Fed. R. Civ. P. 24 ............................................................................................. *passim*

HIGHLY CONFIDENTIAL

## INTRODUCTION

Janssen Biotech, Inc. ("Janssen") hereby moves pursuant to Fed. R. Civ. P. 24 to intervene in this action as defendant and counterclaimant.  Together with Pharmacyclics LLC ("PCYC") (one of the two defendants in the action), Janssen developed and commercialized Imbruvica®, a first-in-class Bruton's tyrosine kinase ("Btk") inhibitor that treats a number of blood cell cancers.  Janssen invested hundreds of millions of dollars to bring Imbruvica to the market and, along with PCYC, markets Imbruvica in the United States and shares in the sales of this important drug.  Nearly five years after Janssen and PCYC obtained approval to market Imbruvica, Acerta and AstraZeneca ("Plaintiffs" or "Acerta") sued PCYC and AbbVie Inc., PCYC's parent, (together "Defendants") alleging that Imbruvica infringes U.S. Patent No. 7,459,554 (the "'554 Patent"), and seeking damages for sales of Janssen and PCYC's blockbuster drug.

Defendants moved to dismiss the action in light of their ensnarement defense, which bars Plaintiffs' sole allegation of infringement under the doctrine of equivalents ("DOE") as a matter of law.  In light of the Court's recent denial of Defendants' motion to dismiss as premature, Janssen seeks to intervene in this action in advance of the initial scheduling conference.  Janssen seeks to join the action as a defendant and counterclaimant to adequately protect its substantial interest and investment in Imbruvica.  ███████████████████████████████████████████ ███████████████████████████████████████████.  Although Janssen shares a common interest with Defendants in defending Imbruvica against Plaintiffs' claims of patent infringement, Defendants and Janssen are differently situated.  AbbVie has a second product on the market that shares indications with Imbruvica, and PCYC is engaged in litigation against Acerta and AstraZeneca involving a follow-on Btk-inhibitor, Acerta's Calquence®.  This action,

HIGHLY CONFIDENTIAL

which names PCYC and AbbVie, but not Janssen, as defendants was filed after PCYC's lawsuit against Calquence.

Under these circumstances, the requirements for intervention as of right as well as permissive intervention are readily met. Indeed, Defendants consent to this motion. Plaintiffs also consent to Janssen's intervention. Janssen has attached a copy of its proposed Answer in Intervention and Counterclaim to its Motion as Exhibit A.

## NATURE AND STAGE OF THE PROCEEDINGS

This case is in early stages. Acerta and AstraZeneca filed this action against PCYC and AbbVie on April 18, 2018 alleging that Imbruvica infringes a single claim of the '554 Patent under the DOE. *See* D.I. 1. PCYC and AbbVie moved to dismiss this action on June 26, 2018 for failure to state a claim upon which relief can be granted. *See* D.I. 18. The Court denied the motion as premature on October 2, 2018. *See* D.I. 36. PCYC and AbbVie filed their answers on October 16, 2018. *See* D.I. 38. The Court set a Rule 16 Conference for November 30, 2018 and an ADR Conference for March 4, 2019. *See* D.I. 41 and D.I. 45.

## SUMMARY OF THE ARGUMENT

1. Janssen meets the standard for intervention as of right under Fed. R. Civ. P. 24(a)(2). This motion is timely and well in advance of the start of discovery. Given its ongoing investment in the development and commercialization of Imbruvica, the product accused of infringement, Janssen's interest in this action cannot be questioned. A finding that the '554 Patent is valid and infringed would impair that interest. The existing parties in the suit may not adequately represent Janssen's interests: Defendants and Janssen have a common interest in defending Imbruvica but they are not similarly situated in this action or in the marketplace.

2.   The requirements for permissive intervention under Fed. R. Civ. P. 24(b)(1)(B) are also met.  Janssen's proposed pleading adopts the answer and counterclaims of Defendants; it denies infringement and counterclaims for declaratory judgment of non-infringement and invalidity of the '554 Patent.  Because Janssen's claims and defenses overlap with Defendants, and given the shared development and commercialization of Imbruvica, there are common questions of law and fact.  Janssen's motion is being filed prior to the Rule 16 conference scheduled for November 30.  It is therefore timely and intervention will not delay the action.

3.   Neither Plaintiffs nor Defendants oppose Janssen's intervention.

## STATEMENT OF FACTS

### A.       The development and marketing of Imbruvica

Imbruvica is a ground-breaking drug and the first ever FDA-approved Btk inhibitor.  It is approved for treatment of patients with rare and aggressive blood cancers including mantle cell lymphoma ("MCL"), chronic lymphocytic leukemia ("CLL"), small lymphocytic lymphoma ("SLL"), Waldenström's Macroglobulinemia ("WM"), and marginal zone lymphoma ("MZL"), as well as for treatment of post-transplant patients with chronic graft-versus-host disease ("cGVHD").  For both MZL and cGVHD, Imbruvica is the first ever FDA-approved treatment. Imbruvica has received four Breakthrough Designations from FDA, a status given to drugs intended to treat a life-threatening disease or condition that show evidence of substantial improvement over existing therapies.  More than 70,000 patients worldwide have been treated with Imbruvica.  There are more than 130 clinical trials of Imbruvica underway and its potential continues to grow.

In December 2011, Janssen partnered with PCYC to bring this revolutionary drug to patients across the United States and the world.  Janssen and PCYC entered into an agreement

HIGHLY CONFIDENTIAL



Janssen has invested hundreds of millions of dollars in the clinical development and commercialization of Imbruvica.  Through these efforts, Janssen and PCYC secured FDA approval of Imbruvica, first in 2013 for MCL, and subsequently for patients with CLL and WM, with further indications subsequently approved.  In 2015, Defendant AbbVie acquired PCYC.  Janssen, along with PCYC, continues to develop Imbruvica for further clinical applications and to commercialize Imbruvica in the United States and abroad.

To this day, five years after its first approval, Imbruvica remains one of the few small molecule drugs available for treatment of these life-threatening blood cancers.  Acerta now markets Calquence, approved in October 2017, for treatment of MCL, one of the indications for Imbruvica.  AbbVie markets Venclexta, approved in April 2016, for treatment of CLL, also an indication for Imbruvica.

### B.    The actions between PCYC/AbbVie and Acerta/AstraZeneca

On November 11, 2017, PCYC sued Acerta Pharma B.V., Acerta Pharma LLC, and AstraZeneca Pharmaceuticals LP, *i.e.*, the Plaintiffs in this later action, for infringement of three of PCYC's patents by the use, offer for sale, sale, manufacture, or import into the United States of Acerta's Calquence ("the Calquence litigation").  *See* No. 17-1582-RGA, D.I. 1 (D. Del.).

Acerta and AstraZeneca then filed this action against PCYC and AbbVie (but not Janssen) in April 2018, alleging that Imbruvica infringes a single claim of the '554 Patent, solely

under the DOE, and seeking damages ("the Imbruvica litigation").  *See* D.I. 1.  PCYC and AbbVie moved to dismiss this action for failure to state a claim upon which relief can be granted, pursuant to the ensnarement doctrine.  *See* D.I. 18.  The Court denied the motion as premature on October 2, 2018.  *See* D.I. 36.  PCYC and AbbVie filed their answers on October 16, 2018, denying infringement and counterclaiming for non-infringement and invalidity of the '554 Patent.  *See* D.I. 38.  Nothing further has occurred in this action.

## ARGUMENT

### I.    Janssen Can Intervene as a Matter of Right

Federal Rule of Civil Procedure 24 provides that a court must permit a nonparty to intervene as a matter of right where the nonparty "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).

A motion to intervene does not raise issues "unique to patent law" and is governed by the substantive law of the regional circuit.  *Ericsson, Inc. v. InterDigital Commc'ns Corp.*, 418 F.3d 1217, 1220-21 (Fed. Cir. 2005).  The Third Circuit has interpreted Rule 24(a)(2) to allow intervention as of right if four elements are met "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation."  *United States v. Territory of the V.I.*, 748 F.3d 514, 519 (3d Cir. 2014).  In evaluating requests to intervene, the Third Circuit has "indicated its preference for 'pragmatism' and 'elasticity' in Rule 24(a)(2) inquiries rather than 'rigid rules' or 'narrow approach[es].'"  *MiiCs & Partners America, Inc. v. Toshiba Corp.*,

C.A. 14-804-RGA, D.I. 160 (D. Del. June 15, 2016) (quoting *Kleisser v. U.S. Forest Serv.*, 157 F.3d 966, 969 (3d Cir. 1998)) (Ex. 1).

As discussed below, Janssen readily meets the standard for intervention as a matter of right. *First*, its motion is timely, before the scheduling conference, and well in advance of the start of discovery. *Second*, given its ongoing investment in the development and commercialization of Imbruvica – the accused product – Janssen has a real and substantial interest in this action. *Third*, a finding that the '554 Patent is valid and infringed would impair that interest. *Fourth*, the existing parties in the suit may not adequately represent Janssen's interests: Defendants and Janssen have a common interest in defending Imbruvica but they are not similarly situated in this action or in the marketplace. The Court should therefore grant Janssen's motion to intervene. *See, e.g. Honeywell Int'l, Inc. v. Audiovox Commc'ns Corp.,* 2005 U.S. Dist. LEXIS 22933 (D. Del. May 18, 2015) (granting manufacturer's motion to intervene as of right in patent infringement litigation); *MiiCs & Partners America, Inc. v. Toshiba Corp.*, No. 14-804-RGA, D.I. 160 (D. Del. June 15, 2016) (same); *Select Retrieval LLC v. Amerimark Direct LLC*, No. 12-1440-RGA, D.I. 34 (D. Del. July 3, 2013) (granting Adobe's motion to intervene as of right or as a matter of discretion in patent infringement action) (Ex. 2); *Intellectual Ventures I LLC v. AT&T Mobility LLC,* 2014 U.S. Dist. LEXIS 125280 (D. Del. Sept. 8, 2014) (same); *Endoheart AG v. Edwards Lifesciences Corp.,* 2015 U.S. Dist. LEXIS 150711 (D. Del. Nov. 6, 2015) (recommending motion to intervene to assert claims of patent ownership be granted as a matter of right), *report & recommendation adopted*, 2016 U.S. Dist. LEXIS 42946 (D. Del. Mar. 31, 2016).

A. **Janssen's motion to intervene is timely**

The first factor is timeliness. Timeliness is not a purely temporal question: it is not a "function of counting days; it is determined by the totality of the circumstances." *United States*

*v. Alcan Aluminum, Inc.* 25 F.3d 1174, 1181 (3d Cir. 1994).  The Court should consider "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay."  *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995) (holding that a motion was timely where written discovery and settlement negotiations had occurred, but depositions and dispositive motions had not).  The "critical inquiry is: what proceedings of substance on the merits have occurred" because "the stage of the proceeding is inherently tied to the question of the prejudice the delay in intervention may cause to the parties already involved."  *Id.* at 369-70.

Janssen's motion is timely.  The action is in its preliminary stages.  The Rule 16 conference has yet to take place and the parties have not even proposed a schedule for the action.  Given the timing, the parties will suffer neither prejudice nor delay by Janssen's intervention at this stage.  *See, e.g. MiiCs*, No.14-804-RGA, D.I. 160 at 5 (granting motion for intervention filed 21 months after complaint because "for nearly eighteen of the twenty-one months…the cases progressed slowly or not at all"); *Select Retrieval LLC*, C.A. 11-812-RGA (D. Del. July 3, 2013) (finding timely a motion to intervene filed "less than four months after the Rule 16 scheduling order and nearly two years before the scheduled trial.")

Janssen did not delay in filing this motion.  The Court recently denied Defendants' motion to dismiss the claim against Imbruvica as being premature.  *See* D.I. 36.  Defendants therefore just recently filed an answer denying infringement and counterclaiming for non-infringement and invalidity of the '554 Patent.  *See* D.I. 38.  In light of these developments, Janssen has prepared the attached responsive pleading, which adopts the answer and counterclaims of Defendants, and seeks to intervene well in advance of the start of any discovery to fully participate in the substance of the action without prejudice or delay to the parties.

HIGHLY CONFIDENTIAL

**B.      Janssen has a compelling interest in this action and its disposition**

The second and third factors for intervention as of right are also readily met.  Janssen has a sufficient interest in this litigation and there is a threat that its interest could be affected by the disposition of the action.

This Court has found that the "polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote."  *MiiCs,* No. 14-804-RGA D.I. 160, at 2 (quoting *Kleisser*, 157 F.3d at 972).  The Court must ask whether Janssen has a "significantly protectable" legal interest in the property or transaction at issue in this matter as opposed to an interest of general and indefinite character.  *Mountain Top Condo. Ass'n,* 72 F.3d at 366.  If so, the Court should "assess the practical consequences of the litigation" and "consider any significant legal effect" of the litigation on Janssen's interest.  *Brody v. Spang*, 957 F.2d 1108, 1122-23 (3d Cir. 1992).

As a co-developer and marketer of Imbruvica, Janssen has a direct and concrete interest in the accused product and the outcome of this action.  *See, e.g. Intellectual Ventures,* 2014 U.S. Dist. LEXIS 125280, at *15 (finding intervention by manufacturer of products necessary to protect its interest where products were accused of infringement); *Honeywell,* 2005 U.S. Dist. LEXIS 22933, at *12 (holding that a manufacturer of a *component* of an accused product has a "compelling interest" in the litigation).  A finding that the '554 Patent is valid and infringed would impair Janssen's interests and, until this action is resolved, it will "loom over any continued effort" Janssen makes to develop and commercialize Imbruvica.  *Trustees of the University of Penn. v. St. Jude Children's Research Hospital*, No. 13-1502-SD, D.I. 76 at 5 (E.D. Pa. March 13, 2014) (finding Novartis had an interest in the litigation because it "committed to invest enormous financial and human resources to the development of the groundbreaking therapies…including the [ ] product accused of infringement.") (Ex. 3).

Further, 

███████████████████████████. This Court has found that an intervenor's financial

obligation for damages suggests a protectable interest. *See, e.g. Select Retrieval*, No. 12-1440-

RGA, D.I. 34 at 3 (finding that intervenor's concession that it has to indemnify clients "is a fairly

strong indicator that its technology is indeed at issue in these cases"). Here, where there is no

doubt that Janssen's technology and breakthrough product is at issue, ████████████████

████████████████████████ reinforce its substantial interest in Imbruvica.

### C.    Defendants may not adequately represent Janssen's interests

As this Court has recognized, as to the final factor for intervention as of right – the

adequacy of representation – an intervenor "need only show that representation *may* be

inadequate, not that it is inadequate." *MiiCs*, No.14-804-RGA, D.I. 160 at 3 (quoting *Am. Farm

Bureau Fed'n v. United States EPA*, 278 F.R.D. 98, 110 (M.D. Pa. 2011) (citing *Trbovich v.

United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)), *aff'd on other grounds*, 792 F.3d 281

(3d Cir. 2015), *cert. denied*, 136 S. Ct. 1246 (2016). Indeed, the "'possibility that the interests of

the applicant and the parties may diverge need not be great in order to satisfy the minimal

burden.'" *Id.* (quoting *Am. Farm*, 278 F.R.D. at 110 (citing *Utah Ass'n of Ctys. v. Clinton*,

255 F.3d 1246, 1254 (10th Cir. 2001)).

Although Janssen and Defendants have a strong, shared interest in defending Imbruvica

against Plaintiffs' allegations of infringement under the DOE, they are not identically situated to

do so and their interests are not identical. In this action, Janssen's concern is to defend

Imbruvica against Plaintiffs' claim that it infringes the '554 Patent. Defendants' interests are

broader and more varied and their representation in this action may not fully protect the full

scope of Janssen's interests.

HIGHLY CONFIDENTIAL

For example, Defendant PCYC is in the midst of its affirmative patent infringement litigation against Acerta's Calquence.  Further, Defendant AbbVie markets a second drug for the treatment of CLL, Venclexta, and therefore occupies a different position than Janssen in the market.[1]  These differences highlight an "asymmetry of interests" between Janssen and Defendants.  *MiiCs*, No.14-804-RGA, D.I. 160 at 3.

For at least these reasons, Defendants may not fully represent Janssen's specific interests in Imbruvica, particularly given the context of the full scope of the proceedings between the parties and representation of PCYC and AbbVie by the same counsel in both.  The representation of Janssen's interests therefore "*may* be inadequate," which supports intervention as of right.  *Id.*

## II.    Permissive Intervention Is Also Appropriate

The Court may also permit Janssen to intervene under Federal Rule of Civil Procedure 24(b).  Rule 24(b)(1)(B) allows for intervention by anyone that "has a claim or defense that shares with the main action a common question of law or fact."  The "central consideration for the exercise of discretion is whether allowing intervention will cause delay or prejudice."  *Bell Atl.-Delaware, Inc. v. Global NAPS S.*, Inc., 77 F. Supp. 2d 492, 502 (D. Del. 1999); *see also* Fed. R. Civ. P. 24(b)(3) (the "court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights").

Janssen readily meets the elements for permissive intervention.  Janssen's proposed pleading adopts the answer and counterclaims of Defendants; it denies infringement and counterclaims for declaratory judgment of non-infringement and invalidity of the '554 Patent.  Because Janssen's claims and defenses overlap with Defendants and given the shared development and commercialization of Imbruvica, there are common questions of law and fact.

---

[1]    According to AbbVie's Third-Quarter 2018 Financial Results, its net revenue for Venclexta was $157,000,000 in the United States.

HIGHLY CONFIDENTIAL

*See, e.g., Nikon Corp. v. ASM Litho. B.V.*, 222 F.R.D. 647, 651 (N.D. Cal. 2004) (intervention granted where "[t]he facts – and, indeed, much of the law – [were] identical" between a manufacturer's declaratory judgment claim and an infringement action against its customer); *HBB Ltd. P'ship  v. Ford Motor Co.*, 1992 U.S. Dist. LEXIS 17543, at *3  (N.D. Ill. Oct. 2, 1992) (requirement for questions of common law and fact satisfied where manufacturer sought to litigate issues "identical to those currently existing in the case: patent invalidity and noninfringement" and was subject to becoming a third party defendant on an indemnity claim); *Lemelson v. Larami Corp.*, 1981 U.S. Dist. LEXIS 17331, at *3 (S.D.N.Y. March 19, 1981) ("common questions of law and fact" existed where customer and manufacturer both asserted invalidity of plaintiff's patent).

In light of these common questions of law and fact, Janssen's intervention will not complicate the issues in the action or delay its progression, result in substantial additional discovery, or otherwise prejudice the parties.

Finally, the motion is timely.  This action is in its preliminary stages.  The motion is being filed prior to the Rule 16 conference.  Intervention will not delay the action.  *See HBB*, 1992 U.S. Dist. LEXIS 17543, at *6 (holding that filing a motion for permissive intervention in the early stages of a case is unlikely to cause "undue delays").

As a result, intervention under Rule 24(b) is also appropriate.  *See, e.g. Select Retrieval LLC*, No. 11-812-RGA, D.I. 34 (D. Del. July 3, 2013) (granting Adobe's motion to intervene in patent infringement action as of right or as a matter of discretion);  *Intellectual Ventures I LLC v. AT&T Mobility LLC,* 2014 U.S. Dist. LEXIS 125280 (D. Del. Sept 8, 2014) (granting motion to intervene in patent infringement action as of right or as a matter of discretion).

**HIGHLY CONFIDENTIAL**

## <u>CONCLUSION</u>

Janssen respectfully requests that the Court grant its motion to intervene as of right pursuant to Rule 24(a) and/or with permission pursuant to Rule 24(b).

MORRIS, NICHOLS, ARSHT &TUNNELL LLP

*/s/ Jeremy A. Tigan*

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan(#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

OF COUNSEL:

Irena Royzman, Ph.D.
Lachlan S. Campbell-Verduyn, Ph.D.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY  10036
(212) 336-2000

*Attorneys for Janssen Biotech, Inc.*

November 21, 2018

EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MiiCs & PARTNERS AMERICA, INC., et al.,

Plaintiffs,

v.

TOSHIBA CORPORATION, et al.,

Defendants.

Civil Action No. 14-803-RGA

MiiCs & PARTNERS AMERICA, INC., et al.,

Plaintiffs,

v.

FUNAI ELECTRIC CO., LTD., et al.,

Defendants.

Civil Action No. 14-804-RGA

## ORDER GRANTING MOTION TO INTERVENE

Presently before the Court are Motions to Intervene, pursuant to Federal Rules of Civil

Procedure 24(a)(2) and 24(b)(1)(B), filed by Samsung Display Company ("SDC") in these

related cases. (C.A. 14-803-RGA, D.I. 105; C.A. 14-804-RGA, D.I. 108). The issue is fully

briefed. (C.A. 14-803-RGA, D.I. 106, 118, 121; C.A. 14-804-RGA, D.I. 109, 121, 124).[1] SDC's

principal argument is that because it is the manufacturer of the accused Liquid Crystal Display

("LCD") modules in numerous accused products and will be indemnifying Defendants if their

products are found to infringe, it is entitled to intervene in order to defend its products. (D.I. 106

at 11–13). Plaintiffs make two arguments in opposing SDC's Motion: (1) that SDC's motion to

---

[1] For simplicity, all subsequent citations to the docket will be to C.A. No. 14-803-RGA unless otherwise noted.

1

intervene is untimely, and (2) that SDC's interests are adequately represented by counsel for

Defendants. (D.I. 118 at 11–17).[2]

> Federal Rule of Civil Procedure 24(a)(2) provides:
>
> On timely motion, the court must permit anyone to intervene who . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

FED. R. CIV. P. 24(a)(2). The Third Circuit has interpreted Rule 24(a)(2) to require that four

elements are met: (1) "a timely application for leave to intervene," (2) "a sufficient interest in the

litigation," (3) "a threat that the interest will be impaired or affected, as a practical matter, by the

disposition of the action," and (4) "inadequate representation of the prospective intervenor's

interest by existing parties to the litigation." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969

(3d Cir. 1998). In *Kleissler*, the Third Circuit indicated its preference for "pragmatism" and

"elasticity" in Rule 24(a)(2) inquiries rather than "rigid rules" or "narrow approach[es]," citing a

"policy preference which, as a matter of judicial economy, favors intervention over subsequent

collateral attacks." *Id.* at 970–71. It also emphasized that "the polestar for evaluating a claim for

intervention is always whether the proposed intervenor's interest is direct or remote." *Id.* at 972.

After considering the above elements, I will grant SDC's motion to intervene. As an

initial matter, Plaintiffs do not meaningfully contest the second and third elements required to

grant a motion to intervene. It is undisputed that SDC is the manufacturer of a number of the

LCD modules at the heart of Plaintiffs' infringement contentions in this case. Accordingly, SDC

plainly has a sufficient interest in this litigation and there is a threat that its interest could be

---

[2] While Plaintiffs include a heading in their brief that purports to argue that SDC does not have a sufficient interest in this litigation, this cursory section, containing only three sentences, does little more than restate their argument that SDC's motion was untimely. (D.I. 118 at 14–15).

2

affected by the disposition of the action. *See Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*, 2005 WL 2465898, at *4 (D. Del. May 18, 2005) ("[The proposed intervenor] has a sufficient interest in the litigation; indeed, as a manufacturer of the product component which is at the heart of these cases, it has a compelling interest.").

Plaintiffs argue that Defendants, who are SDC's customers, adequately represent SDC's interests because their interests are identical and Defendants have well-regarded counsel. (D.I. 118 at 14–17). The inadequate representation prong can be met when "although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests." *United States v. Territory of Virgin Islands*, 748 F.3d 514, 519–20 (3d Cir. 2014). "[A]n intervenor need only show that representation *may* be inadequate, not that it is inadequate." *Am. Farm Bureau Fed'n v. United States EPA*, 278 F.R.D. 98, 110 (M.D. Pa. 2011) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)), *aff'd on other grounds*, 792 F.3d 281 (3d Cir. 2015), *cert. denied*, 136 S. Ct. 1246 (2016). "'The possibility that the interests of the applicant and the parties may diverge need not be great in order to satisfy the minimal burden.'" *Id.* (quoting *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1254 (10th Cir. 2001)). The very fact that not all of the Defendants' products contain SDC's modules highlights a sufficient asymmetry of interests between SDC and Defendants. Moreover, because SDC "is uniquely situated to understand and defend its own product, its interests are not adequately represented by existing parties to the litigation." *Honeywell*, 2005 WL 2465898 at *4. Accordingly, I conclude that SDC's interests diverge sufficiently from those of the Toshiba and Funai Defendants to justify intervention.

The most vigorously disputed element of the test for intervention as a matter of right under Rule 24(a)(2) is whether SDC's motion is timely. Plaintiffs argue that SDC should have

moved to intervene much earlier because the case was filed in June of 2014, SDC knew about

Plaintiffs' patents before the case was filed, and SDC assisted Defendants in filing IPRs against

the patents-in-suit. (D.I. 118 at 14–17). Plaintiffs further contend that they will be prejudiced by

SDC's intervention because invalidity and infringement contentions have already been served

and because SDC refused to supply information in response to Plaintiffs' previous efforts to

discern the relationship between Defendants and SDC. (*Id.* at 16–17). SDC argues that although

the case was filed in 2014, the amended complaint and stay have led to the case not advancing

significantly, as "[t]he parties must still work through claim construction, the end of fact

discovery, the exchange of expert reports, and case-dispositive motions (if any)." (D.I. 106 at 9).

The Third Circuit considers three factors in determining whether a motion to intervene is

timely: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and

(3) the reason for the delay." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,

72 F.3d 361, 369 (3d Cir. 1995). "The mere passage of time [] does not render an application

untimely. . . . [T]he critical inquiry is: what proceedings of substance on the merits have

occurred?" *Id.* (citations omitted). "[S]ince in situations in which intervention is of right the

would-be intervenor may be seriously harmed if he is not permitted to intervene, courts should

be reluctant to dismiss a request for intervention as untimely, even though they might deny the

request if the intervention were merely permissive." *Id.* (internal quotation marks omitted).

Here, while these cases were filed on June 24, 2014, roughly twenty-one months before

SDC moved to intervene, very little occurred in the first nine months until Plaintiffs filed their

First Amended Complaints and their initial infringement contentions on March 31, 2015. (D.I. 1,

35). In June 2015, SDC and Defendants submitted IPR petitions on all of the asserted patents

and Defendants moved to stay these litigations on July 14 and 16, 2015, respectively. (D.I. 69;

C.A. No. 14-804-RGA, D.I. 74). On July 15 and 16, 2015 respectively, Defendants served their

invalidity contentions. (D.I. 72; C.A. No. 14-804-RGA, D.I. 73). This Court granted

Defendants' motions for stays on August 11, 2015 and the cases were stayed for nearly eight

months. (D.I. 82). After the PTAB's institution decision, the Court outlined a way to proceed

with lifting the stays and held a scheduling conference. (D.I. 98, 104). SDC sought to and was

granted permission to attend the scheduling conference, where it informed the Court of its intent

to intervene. (D.I. 104). After it became clear during the March 15, 2016 scheduling conference

that the stay would be lifted if Plaintiffs dismissed certain patents and that Plaintiffs would not

consent to SDC's intervention, SDC promptly moved to intervene on March 21, 2016. (D.I.

105). The Court lifted the stays on March 23 and 31, 2016, respectively, after Plaintiffs agreed

to dismiss five patents (upon which the PTAB instituted IPR) from the case entirely and to not

assert claims of a sixth patent, resulting in significant simplification of the case. (D.I. 112; C.A.

No. 12-804-RGA, D.I. 117).

Accordingly, for nearly eighteen of the twenty-one months after Plaintiffs filed their

initial complaints, the cases progressed slowly or not at all. Most importantly, almost no

"proceedings of substance on the merits have occurred" in these cases. *See Mountain Top*, 72

F.3d at 369. The Court has yet to hold a *Markman* hearing and the parties must still complete

document production, exchange expert reports, finish fact discovery, and submit case dispositive

motions. Trials are scheduled for October 2017 and December 2017 respectively. (D.I. 112;

C.A. 14-803-RGA, D.I. 117). Accordingly, SDC's motion is sufficiently timely under the

totality of the circumstances. In addition, I do not think that Plaintiffs will suffer any serious

prejudice as a result of SDC's entry into the case.

The motions to intervene (C.A. No. 14-803-RGA, D.I. 105; C.A. No. 14-804-RGA, D.I. 108) are **GRANTED**. The Court also **DIRECTS** that while SDC may participate in the *Markman* hearing, it may not offer constructions and arguments different than those already submitted in the claim construction briefs exchanged by the current parties.[3]

Plaintiffs' Motions for Leave to File Sur-Reply Briefs in Support of their Opposition to the Motion to Intervene (C.A. No. 14-803-RGA, D.I. 125; C.A. No. 14-804-RGA, D.I. 128) are **DENIED**.[4]

Entered this 15 day of June, 2016.

United States District Judge

---

[3] While SDC moved to intervene about a month before opening claim construction briefing was exchanged and moved to expedite briefing on this issue, briefing on the motion to intervene was not completed until a day before the first claim construction briefing was exchanged. Currently, claim construction briefing appears to have been completed and in order for this case to stay on schedule—a goal SDC says it is on board with—SDC must live with this necessary consequence of its decision not to intervene sooner. In any event, it seems likely that, much like with the claim construction positions taken before the PTAB, SDC participated in some form in Defendants' claim construction briefing efforts.

[4] The parties spill considerable ink arguing about whether SDC adequately proved with timely evidence that it supplies LCD modules to Toshiba and Funai and that it will indemnify these customer-defendants in this case. (D.I. 125, 127, 128, 131). To be sure, SDC waited too long to provide documents that actually connected the multiple layers of supply and indemnification agreements that contractually obligate SDC to Defendants via various Samsung entities. (D.I. 127, 128). However, Plaintiffs do not actually dispute that SDC's LCD modules are contained in eight of the accused Toshiba products, and one of the accused Funai products, or that the modules are at the heart of its infringement case. Accordingly, the fact that SDC is the manufacturer of important product components at issue in this litigation is sufficient to establish its interest in the litigation and I need not consider the untimely supply agreements submitted by SDC. *See Honeywell*, 2005 WL 2465898, at *4.

EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SELECT RETRIEVAL LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 11-812-RGA |
| | : | |
| AMERIMARK DIRECT LLC., et al., | : | |
| | : | |
| Defendants. | : | |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SELECT RETRIEVAL LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 12-1440-RGA |
| | : | |
| PROVIDE COMMERCE INC., | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM ORDER**

In these cases the Plaintiff has sued various defendants for patent infringement. Five of

the defendants (Macy's Inc., Hayneedle Inc., Ross-Simons of Warwick Inc., Charming Shoppes

Inc., and Motosport, Inc.) are customers of Adobe.[1] The Plaintiff did not sue Adobe. Adobe has

sued the Plaintiff in the Southern District of California for a declaratory judgment that it does not

---

[1] It may actually be six, since it was represented at oral argument that B&H Foto was also a customer. (D.I. 636, at 5).

infringe the patent. *Adobe Systems, Inc. v. Select Retrieval, LLC*, No. 12-cv-2342. That case appears to have had no activity to speak of since 2012. A second Southern District of California case has been quite active. *Select Retrieval LLC v. American Apparel*, No. 11-2158. As far as I can tell from CM/ECF, it appears Adobe had taken over the defense of the last remaining defendant in that case, and that has recently resolved. Adobe has filed motions to intervene in the instant cases, for the limited purpose of staying the cases against its five clients until completion of the California case. Plaintiff opposes.

For various reasons, there is litigation on the same patent between the Plaintiff and other Adobe clients not only in the Southern District of California but also in Oregon, Illinois, and Maine. (D.I. 535, p.5, n.4). There is pending litigation on the same patent in a number of other districts too. (*See id.* at p.1, n.2). The same motion was filed by Adobe in Oregon, Maine, the Northern District of Illinois, and the Southern District of California. The District Court in Maine granted the motion; the District Courts in Oregon and Southern California denied the motion; and the Illinois motion remains pending. The Courts that have decided the motion agreed on the analytical framework, and neither party disputes that framework.[2]

The main point of dispute in the related cases was whether there was a significant protectable interest. This has usually involved two considerations. One is the extent to which Adobe's technology is at issue. The other is whether Adobe has had a duty to defend and indemnify its clients. Deciding how much of Adobe's technology is at issue is not an easy issue. On the other hand, at oral argument, Plaintiff did not dispute that Adobe had a duty to defend and

---

[2] Intervention of right depends upon analysis of: (1) the timeliness of the motion; (2) whether the intervenor has a significantly protectable interest; (3) whether the resolution of the matter may impair the intervenor's ability to protect its interest; and (4) whether the existing parties will adequately protect the intervenor's interest. Fed. R. Civ. P. 24(a).

indemnify its five clients. (D.I. 636, at 35). (Adobe's lawyers were then representing four of the five clients. I believe they are now representing all five.). The fact that Adobe has acknowledged its duty to defend and indemnify is a fairly strong indicator that its technology is indeed at issue in these cases. Further, the fact that these five Adobe clients (as well as at least four more Adobe clients in the four related cases) all are alleged to infringe the patent suggests that Adobe's technology may be the common link that provides a basis to believe each of the nine or more companies infringes the patent. Thus, I do not think it is necessary to delve into the technology here to conclude that Adobe does have a significant protectable interest.

In regard to the other intervention as of right factors, the motion to intervene is very timely in No. 12-1440. It was not as timely as it could have been in No. 11-812, but it is not untimely. It was filed less than four months after the Rule 16 scheduling order and nearly two years before the scheduled trial.

The third and fourth factors address the ability to protect Adobe's interest. Adobe has a significant interest in having its technology not be subject to piecemeal attacks scattered hither and yon across the United States, with the possibility of redundant litigation and inconsistent verdicts.

Thus, I will **GRANT** the Motions to Intervene, either as of right or as a matter of discretion. *See* Fed. R. Civ. P. 24(a)(2) & (b)(1)(B).

In regard to the Motions to Sever (only applicable in No. 11-812), I have no hesitation in concluding that the four Adobe customers are not properly joined to cases involving other defendants using technology obtained elsewhere. Indeed, Plaintiff does not oppose this motion for trial, but does want consolidation pretrial. Thus, I will **GRANT** the Motions to Sever.

In regard to the Motions to Stay, based on the "customer suit exception," I have had the

issue arise before. *See Pragmatus Telecom, LLC v. Advanced Store Co., Inc.*, 2012 WL 2803695 (D.Del. July 10, 2012). The facts here are not exactly the same as in *Pragmatus*. The two most significant differences are that the manufacturer declaratory judgment is in another district, and the customer defendants have not agreed to be bound by the results. (D.I. 566, p.7).

I would very much like to grant the motions to stay. There are, however, too many loose ends. It seems to me that since Adobe has indemnified the customer defendants, it should be able, if it wanted, to bind the customers. Further, given the lack of activity in the declaratory judgment action, I cannot think that it presents a particularly fair (to the Plaintiff) alternative to the pending litigation.

Thus, after full briefing and oral argument, the Motions to Intervene (No. 11-812, D.I. 534; No. 12-1440, D.I. 8) are **GRANTED**; the Motions to Sever (D.I. 534) are **GRANTED** as to Defendants Macy's Inc., Hayneedle Inc., Ross-Simons of Warwick Inc., and Charming Shoppes Inc.; the cases against them are **CONSOLIDATED** for all purposes other than trial with the other remaining defendants in No. 11-812;[3] and the Motions to Stay (No. 11-812, D.I. 534; No. 12-1440, D.I. 8) are **DENIED.**

July 3, 2013
/Date

United States District Judge

---

[3] It appears that there are only three other remaining defendants, one of which is B&H Foto.

EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRUSTEES OF THE UNIVERSITY | : | CIVIL ACTION |
| OF PENNSYLVANIA | : | |
| | : | |
| v. | : | |
| | : | |
| ST. JUDE CHILDREN'S RESEARCH | : | NO. 13-1502 |
| HOSPITAL, et al. | : | |
| | : | |

ORDER

AND NOW, this 13th day of March, 2014, upon consideration of Novartis

Pharmaceuticals Corporation's ("Novartis") motion to intervene (docket entry # 57), St. Jude

Children's Research Hospital's ("St. Jude") motion for order allowing it voluntarily to dismiss its

counterclaims for patent infringement (docket entry # 70), Juno Therapeutics, Inc.'s ("Juno")

response in opposition to Novartis's motion to intervene (docket entry # 71), Juno's redacted

motion to dismiss for lack of jurisdiction (docket entry # 72), and its motion to file a non-

redacted version of the motion to dismiss under seal (docket entry # 73), and the Court finding

that:

(a)    Novartis seeks to intervene in order to protect its "substantial interests" in

CTL019, a drug product that uses the Chimeric Antigen Receptor ("CAR") technology at issue

in this litigation in order to "destroy leukemic B cells expressing the CD-19 cell surface antigen",

Novartis Mot. at 1;

(b)    Novartis avers that on August 3, 2012, the Trustees of the University of

Pennsylvania ("Penn") entered into a Collaboration and License Agreement with Novartis

Institutes for Biomedical Research, Inc. granting Novartis Institutes for Biomedical Research,

Inc. exclusive rights in CTL019, among other products, and that since the parties signed the

contract, Novartis Institutes for Biomedical Research, Inc. has transferred responsibility for
developing CTL019 to intervenor Novartis "the Novartis affiliate responsible for taking drug
candidates through clinical trials and the FDA approval process and ultimately, manufacturing
and marketing", id. at 2, n.2;

(c)     Novartis avers that to date, it has "conducted significant activities and has
devoted substantial resources relating to CTL019, including participation in clinical trials,
research and development on CTL019, manufacturing scale-up, and the establishment, at
considerable expense, of a research and manufacturing site for CTL019 in Morris Plains, New
Jersey", id. at 3;

(d)     One controversy in the consolidated action before us here is Penn's action
against St. Jude seeking a declaration that U.S. Patent No. 8,399,645 ("the '645 patent"), which
St. Jude owns, is invalid and that Penn has not infringed and is not infringing any valid and
enforceable claim of the patent, see Penn Comp. ¶¶ 9, 35, 38;

(e)     Yesterday, Juno has moved to dismiss these claims;

(f)     In response to Penn's invalidity and non-infringement claims, St. Jude
asserted counterclaims alleging that Penn's current conduct constitutes infringement of the '645
patent and that Penn is making preparations to infringe further, see St. Jude Counterclaims at ¶¶
10-34;

(g)     St. Jude has moved to dismiss its counterclaims voluntarily;

(h)     Novartis says that it "seeks to intervene to obtain a declaration that its
conduct does not and will not infringe the '645 patent and that the '645 patent is invalid",
Novartis Mot. at 4;

2

(i)     Juno argues that we should deny Novartis's motion to intervene because "this Court has no subject matter jurisdiction over Penn's declaratory judgment claims relating to the '645 patent, which Juno has concurrently moved to dismiss, nor over the identical claims Novartis is trying to bring on the '645 patent", Juno Resp. at 6;

(j)     This is the argument on which Juno bases its motion to dismiss -- that is, that

> all of [Penn's] activities relating to the patented technology at issue are exempt from claims of infringement under the safe harbor of 35 U.S.C. § 271(e)(1) . . . which exempts from infringement liability activities conducted for the purposes of submitting information to the Food and Drug Administration for approval of pharmaceutical products.

Id.;

(k)     Juno thus appears to argue that we should deny Novartis's attempt to intervene because of the self-evident merit of the legal claims in Juno's motion to dismiss;

(l)     Without expressing an opinion as to whether Juno's motion to dismiss will ultimately carry the day, we reject the premise that we should not allow Novartis to intervene on the basis of an argument on whose validity we have not yet ruled and to which Novartis would respond if it did intervene;

(m)   If we agree with Juno that we lack subject matter jurisdiction over the patent claims, such a conclusion would affect Novartis's interests, as we discuss below, and we find that, if Novartis meets the other criteria for intervention, the better course is to allow Novartis to intervene so that it may respond to Juno's motion to dismiss;

(n)     We thus consider whether Novartis otherwise meets the criteria for intervention;

(o)     Fed. R. Civ. P. 24(a) governs intervention as of right; it provides that on a

timely motion we must permit intervention where a party "claims an interest relating to the

property or transaction that is the subject of the action, and is so situated that disposing of the

action may as a practical matter impair or impede the movant's ability to protect its interest,

unless existing parties adequately represent that interest", Fed. R. Civ. P. 24(a)(2),

(p)     In Kleissler v. U.S. Forest Service, 157 F.3d 964 (3d Cir. 1998), our Court

of Appeals explained that

> [w]e have interpreted Rule 24(a)(2) to require proof of four
> elements . . . first, a timely application for leave to intervene;
> second, a sufficient interest in the litigation; third, a threat that the
> interest will be impaired or affected, as a practical matter, by the
> disposition of the action; and fourth, inadequate representation of
> the prospective intervenor's interest by existing parties to the
> litigation.

Id. at 969;

(q)     As our Court of Appeals explained in Mountain Top Condominium Ass'n v.

Dave Stabbert Master Builder, Inc., 72 F.3d 361 (3d Cir. 1995), and reiterated more recently in

Benjamin ex rel. Yock v. Dep't of Public Welfare of Pennsylvania, 701 F.3d 938 (3d Cir. 2012),

timeliness in intervention is a question of "(1) the stage of the proceeding; (2) the prejudice that

delay may cause the parties; and (3) the reason for the delay", Benjamin, 701 F.3d at 950

(quoting Mountain Top, 72 F.3d at 369);

(r)     Ultimately, "the critical inquiry is: what proceedings of substance on the

merits have occurred?" Mountain Top, 72 F.3d at 369, because "the stage of the proceeding is

inherently tied to the question of the prejudice the delay in intervention may cause to the parties

already involved", id. at 370;

(s)     Here, where a motion to dismiss on this claim was just filed, and where

Novartis participated in a scheduling conference on January 28, 2014 and participated in

mediation discussions with Judge Hart thereafter, Novartis would "be entering the litigation at

the same time and stage as Juno", Novartis Mot. at 7, we find that the stage of the proceeding

and lack of prejudice to the parties counsel in favor of intervention;

(t)     Moreover, with regard to the reason for the delay, Novartis avers that its

motion is based on Juno's intervention -- we granted Juno's unopposed motion to intervene on

December 18, 2013, and Novartis moved to intervene on January 22, 2014 -- this one-month

period can hardly constitute undue delay;

(u)     Novartis's interest in the ligation is that it has "committed to invest

enormous financial and human resources to the development of the groundbreaking therapies

based on Dr. June's work, including the CTL019 product accused of infringement in this action",

Novartis Mot. at 10, and this interest would clearly be "impaired or affected" by dismissal of

Penn's claims of invalidity and non-infringement of the patent -- the specter of a future

infringement action would loom over any continued effort Novartis makes to bring CTL019 to

market;

(v)     Novartis argues that Penn cannot adequately represent its interest because

Penn, as a non-profit research institution, plays a different role in the development of the

immunotherapy than does Novartis: "While Penn's scientists were instrumental in developing

CTL019, it is Novartis that will commit the resources necessary to take CTL019 through costly

later-phase clinical trials, obtain FDA approval, and manufacture and market the product",

Novartis Mot. at 10;

(w)   Novartis likens Penn's participation in the action in relation to Novartis to St. Jude's participation in relation to Juno: "Penn, like St. Jude, is a nonprofit research institute and does not have the same commercial interests at stake in the litigation as Novartis", id. at 11;

(x)   We agree, and we will grant Novartis's motion to intervene pursuant to Fed. R. Civ. P. 24(a)(2) for the reasons just canvassed;

It is hereby ORDERED that:

1.   Novartis Pharmaceuticals Corporation's motion to intervene (docket entry # 57) is GRANTED;

2.   If the parties wish to RESPOND to St. Jude Children's Research Hospital's motion for order allowing it to voluntarily dismiss its counterclaims for patent infringement, they shall do so by noon on March 26, 2014;

3.   Juno Therapeutics, Inc.'s motion to file under seal a non-redacted version of its motion to dismiss (docket entry # 73) is GRANTED; and

4.   The Trustees of the University of Pennsylvania and Novartis Pharmaceuticals Corporation shall RESPOND to Juno's motion to dismiss by noon on March 26, 2014.

BY THE COURT:

/s/ Stewart Dalzell, J.